UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEANGELO BENNETT,

    Plaintiff,

    v.      CAUSE NO. 3:24-CV-42-DRL-MGG

MIAMI CORRECTIONAL FACILITY, M. JACKSON, B. MYERS, and MYERS,

    Defendants.

OPINION AND ORDER

Deangelo Bennett, a prisoner without a lawyer, filed a complaint in Indiana State Court that the defendants removed to this court. ECF 1, 3. Because he is a prisoner, 28 U.S.C. § 1915A requires that the court review the merits of his complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted).

Mr. Bennett alleges that on or around June 13, 2023, he was brought to Miami Correctional Facility's Administrative Housing Unit (AHU) because he was charged with battery on another offender. After he was found guilty of the offense, he was sentenced to 60 days to be served in the Restrictive Housing Unit (RHU). In RHU, he was placed on a no power range, which means that offenders cannot receive power for tablets or

televisions, and his general privileges were revoked, which means he cannot have visitation, purchase food from commissary, or possess all his property items.

Mr. Bennett alleges he was supposed to be released from RHU on August 15, 2023. According to prison policy, at that point he was supposed to be returned to general population and his privileges restored. He began asking Lieutenant Myers, Ms. Myers, Ms. Jackson, and the Warden of Miami Correctional Facility why he had not been released yet. He reports that each of them told him it was not their job to have him relocated, and he remained in RHU. Three weeks past his release date, he learned from Ms. Jackson that there were no beds available for him in general population. He alleges that she was rude and disrespectful towards him when he repeated that he was three weeks past his release date. He asked to at least be placed on a range with power, and she denied him that.

Mr. Bennett filed suit, claiming his due process rights were violated every day he remained in segregation past his release date. He complains that he has not been able to call and talk to his loved ones when he wants to because, without power in his cell, he can only charge his tablet at certain times of the day. He cannot order extra food from commissary, like he would be able to in general population. His access to property is restricted, leaving him with limited hygiene, clothing, or property. He has no access to a razor for shaving, cannot watch television in his cell or use his hot pot, and he is allowed only one religious book as reading material. He says he has lost weight because he cannot order extra food from commissary.

Mr. Bennett does not state a due process claim. The only sanction he alleges he suffered as a result of the disciplinary process was a period of time in RHU. The Fourteenth Amendment due process clause does not create a liberty interest in avoiding transfer within a correctional facility or in remaining in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, due process protections are triggered only when a transfer to segregation results in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, "an inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). "When an inmate is placed in conditions more restrictive than those in the general prison population . . . his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013).

Mr. Bennett certified that he submitted this case for filing on October 25, 2023, making his total time in segregation at the time of filing just over four months. Four months is not a significantly long period of segregation. *Hardaway*, 734 F.3d at 743 (prisoner who was in segregation for six months did not allege a liberty interest, because "relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions"); *Smith v. Akpore*, 689 F. App'x 458, 459-60 (7th Cir. 2017) (no liberty interest in four months' combined investigative and disciplinary segregation).

3

In looking at the conditions alleged, Mr. Bennett states that he does not have access to all his personal property, cannot purchase food off commissary, and is restricted on when he can call his loved ones. Prisoners generally do not have a liberty interest in phone, visitation, or commissary privileges. *See Lekas v. Briley*, 405 F.3d 602, 610-12 (7th Cir. 2005)). These conditions, while more restrictive than those in general population, do not appear "unusually harsh." *Earl*, 718 F.3d at 691; *see also Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (harsh conditions in segregation "did not greatly exceed what a prison inmate could expect from confinement generally" and thus did not trigger a liberty interest). Mr. Bennett has not plausibly alleged that his time in segregation triggered a liberty interest, and therefore his does not state a due process claim for being held in RHU past his release date.

Additionally, Mr. Bennett complains that he was held in RHU in violation of prison policy. Violations of prison policy alone cannot form the basis for a federal claim. *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations").

In addition to the Fourteenth Amendment, Mr. Bennet also mentions possible violations of the Fourth, Fifth, Sixth, and Eighth Amendments. Of those, the Eighth Amendment is the most applicable, so the court considers whether he may proceed under that amendment. In evaluating an Eighth Amendment claim, there is both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong

4

asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison employee leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Id*.; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). This is a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to allege an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020).

The conditions Mr. Bennett describes in the segregation unit include not having access to all his personal property and commissary items and having limited access to calling his loved ones. These allegations, while certainly unpleasant, do not plausibly amount to the type of severe deprivation that would give rise to an Eighth Amendment claim. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001) ("extreme deprivations are required to make out a conditions-of-confinement claim").

Mr. Bennett states that he filed a tort claim notice as required by Indiana Code § 34-13-3-1 to pursue state law claims. "Ordinarily, when a district court dismisses the federal claims conferring original jurisdiction prior to trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. 1367(c)." *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010). Therefore, the court does not discuss any potential state law claims. Without any federal claims, remand is appropriate.

If Mr. Bennett only wants to pursue his state claims, he can do so because "the plaintiff as master of the complaint may present (or abjure) any claim he likes." *Katz v. Gerardi*, 552 F.3d 558, 563 (7th Cir. 2009). To proceed with his state claims, Mr. Bennett

5

need only file a notice with the clerk saying he wants to proceed on his state claims. Alternatively, if Mr. Bennett believes he has a federal claim, he can file an amended complaint based on (and consistent with) the events described in the original complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) DISMISSES the federal claims;

(2) GRANTS Deangelo Bennett until **April 22, 2024**, to EITHER file an amended complaint OR a Notice saying he wants to proceed with his State claims; and

(3) CAUTIONS Deangelo Bennett if he does not respond by the deadline, this case will be remanded to State court.

SO ORDERED.

March 29, 2024                                          *s/ Damon R. Leichty*
                                                        Judge, United States District Court